El Pueblo de Puerto Rico, demandante y apelado, *v.* Hipólito Rodríguez, acusado y apelante.

No. 3238.—*Visto:* Junio 19, 1928. *Resuelto:* Julio 26, 1928.

*Armando A. Miranda,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La acusación formulada por el fiscal, en lo pertinente, dice:

"El referido acusado, Hipólito Rodríguez, el día 6 de enero de 1927 y en la carretera que conduce de Arecibo a San Juan, barrio Santana, de Arecibo, Puerto Rico, ilegal y voluntariamente y en ocasión en que guiaba como chauffeur un automóvil o vehículo de motor, lo hizo con tal descuido y negligencia y sin guardar la debida prudencia y circunspección, que arrolló a Francisco Padilla (ser humano) ocasionándole lesiones de gravedad que le produjeron la muerte casi instantáneamente."

Alegó el acusado su inocencia, fué la causa a juicio y el jurado rindió un veredicto de culpable de homicidio involuntario. La corte dictó sentencia imponiendo tres años de presidio al acusado que, no conforme, interpuso el presente recurso de apelación señalando en su alegato siete errores.

Los tres primeros y el sexto pueden estudiarse conjuntamente. Al declarar varios testigos presenciales y describir el sitio en que ocurrió el choque productor de la muerte de Padilla, se les presentó una fotografía y se les pidió que manifestaran si representaba fielmente dicho sitio y se les

hicieron varias preguntas en relación con detalles que aparecían en la misma. La defensa se opuso. Y la corte permitió a los testigos declarar. A estos incidentes se refieren los tres primeros errores. Cuando los dichos testigos presenciales declaraban, no se había aún introducido como prueba la fotografía. Se introdujo después que declaró el fotógrafo que la tomó. La defensa también se opuso y por el sexto error presenta la cuestión a la consideración de esta Corte Suprema.

A nuestro juicio ninguno de los dichos errores existe. El hecho de que la fotografía se tomara horas después de ocurrido el choque, no era un obstáculo para su admisión. No se quiso hacer aparecer que se había tomado en el acto. Se dijo la verdad y las declaraciones de los testigos presenciales al describir ellos mismos el sitio, los destrozos que causó el automóvil y cómo quedó éste después del choque y al expresar que la fotografía representaba todo fielmente, unidas a la declaración del fotógrafo que la tomó, constituyeron una base suficiente para la admisión.

En Corpus Juris encontramos lo que sigue:

"Una fotografía que se ha demostrado es una fiel representación de la persona, sitio, o cosa que ella trata de representar es prueba competente de todo aquello sobre lo cual es propio y pertinente que un testigo haga una descripción oral. Aún cuando antes de que una fotografía sea admisible en evidencia debe probarse que es una representación fiel y correcta de lo que ella trata de representar, no es necesario que se identifique con el juramento del fotógrafo que la tomó; la base para su admisión puede ser sentada por cualquier persona que declare en cuanto a su corrección como una representación o parecido de la cosa." 16 C. J. 744, Sec. 1528.

En su tratado sobre Evidencia, Wigmore dice:

"El testigo que así apadrine la fotografía debe cualificarse con la observación de que hable de lo que está representado en la misma. Debe dejarse a la corte sentenciadora al determinar si se ha cumplido debidamente con este requisito.

"No se necesita que el testigo que usa el mapa o la fotografía

como representativo de su conocimiento sea el autor del mismo. Él afirma que representa lo que él observó; y éste es el elemento esencial.'' Wigmore on Evidence, Vol. 1, página 900.

Y la Corte Suprema de California en el caso de *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195, resolvió:

''Surgió alguna cuestión en cuanto a la base sentada para la admisión en evidencia de las fotografías del automóvil averiado. La regla es enteramente simple. La declaración de que una fotografía es una representación correcta del objecto que se intenta demostrar es base suficiente para su admisión. No es necesario que tal declaración sea hecha por el fotógrafo que tomó o preparó la fografía sino que puede ser hecha por cualquier testigo que conozca el objeto lo suficiente para decir que la fotografía es una representación fiel del mismo. (*People* vs. *Ah Lee,* 164 Cal. 350, 352; 128 Pac. 1035; *People* vs. *Durrant,* 116 Cal. 179, 212, 48 Pac. 75.)''

El cuarto error se formula así:

''La Corte inferior erró al permitir que el Fiscal hiciera al perito médico la pregunta que aparece al final de la página 19 del Récord.''

La referencia al récord lee como sigue:

''P.—Mi pregunta es que cómo pudieron ser ocasionadas las lesiones. Qué agente pudo ocasionar esas lesiones? Por cualquier golpe que recibiera el cuerpo produciendo las fracturas de los huesos que ocasionaron las hemorragias.—P.—Cree que un choque . . . Abogado Sr. Reyes: Me opongo ahora a la sugerencia que hace el Sr. Fiscal.— Hon. Juez: Habla de un golpe. Hay que hacer preguntas al testigo, al perito, como si fueran hipotéticas.—P.—En la hipótesis de que Francisco Padilla fuera en una bicicleta y viniera un automóvil . . . Abogado Sr. Reyes: Me opongo a que se le pregunte en esa condición.—Hon. Juez.—Deje que termine la pregunta el Fiscal.—P.—Suponiendo que Francisco Padilla hubiera estado caminando en una bicicleta y un automóvil lo hubiera chocado en la bicicleta, cree que ese choque hubiera podido causar esas lesiones?—Abogado Sr. Reyes: Nos oponemos, por ser ilegal la pregunta. Dentro de la hipótesis de que Padilla fuera en una bicicleta no necesariamente cabe que chocara con el carro del supuesto acusado, sino que ha podido tener otro accidente que pudo ocasionar esa lesión.—Hon. Juez: Sin lugar la oposición.—Abogado Sr. Reyes: Tomo excepción.—P.—Conteste.— Testigo: Esos golpes han podido ser producidos por un choque en esa forma.''

Basta la simple lectura de lo ocurrido para concluir que el error no existe. El perito a quien se preguntaba era el propio facultativo que había practicado la autopsia de Padilla y acababa de declarar sobre el resultado de la misma, y la pregunta hipotética se basaba en hechos ya establecidos por la prueba.

Corpus Juris resumiendo la jurisprudencia sobre la materia, dice:

"A un médico debidamente cualificado que personalmente ha examinado el cuerpo del muerto, o en contestación a una pregunta hipotética fundada en los hechos según han sido descritos por otros testigos, puede permitírsele que exprese su opinión sobre la causa de la muerte de la víctima, o puede decir de cuántas diferentes maneras pudo causarse la muerte, o que no se descubrió ninguna causa natural de muerte, o que la muerte no fué consecuencia de una causa particular, y prueba parecida puede ser obtenida del médico que atendió a la víctima desde el día que sufrió las lesiones hasta su muerte, o de otros peritos cualificados, tales como químicos." 30 C. J. 219.

Sin embargo, a menos que sea en verdad necesario, no debe recurrirse a las preguntas hipotéticas. A veces todo un edificio que se ha levantado a virtud de grandes esfuerzos viene al suelo a causa de una prueba indebidamente ofrecida y admitïda y en muchas ocasiones innecesaria.

Aquí, por ejemplo, donde existen testigos que vieron a Padilla montado en su bicicleta chocar con el automóvil que guiaba el acusado y saltar por encima de la cerca del colegio de Santana, encontrándolo muerto al instante, ¿qué más se necesitaba que declarara el doctor que acerca del resultado de la autopsia?

■ El quinto error carece de mérito alguno. Se funda en que la corte permitió la declaración de un testigo que se encontraba en el salón y que por tanto había tenido ocasión de oír la prueba practicada. Nada se había advertido, ninguna regla se había adoptado y el testigo que lo era el fotógrafo declaró esencialmente sobre el hecho de la toma de la fotografía sobre el cual ninguno otro había declarado.

Resta sólo considerar el último de los errores. Por él se sostiene que la corte erró al no ordenar al jurado que rindiera un veredicto de no culpable por no haberse identificado al acusado y por no haberse probado que el acusado manejara imprudente y negligentemente el automóvil.

Dos de los testigos reconocieron sin vacilaciones al acusado como la persona que guiaba el automóvil que ocasionó el choque. La negligencia, la imprudencia, la falta de circunspección del acusado consistió en guiar su auto a gran velocidad por una carretera concurrida, frente a un colegio y donde existía otro auto parado, viniendo otra persona en una bicicleta en dirección contraria.

Es cierto que no se probó a cuantas millas por hora corría el acusado, pero uno de los testigos, Ezequiel Rodríguez, declaró:

"Pasó por el lado mío y llevaba una velocidad muy fuerte, que la velocidad esa casi me llevó el sombrero y me atrapé el sombrero; y estaba Ramón Rivera y Federico Díaz al lado mío y dije: Ave María Purísima! que velocidad más fuerte lleva el carro ese; y a distancia de cincuenta metros venía un señor en una bicicleta, al lado derecho, como de Manatí para Arecibo y en esa misma distancia quedaba un carro que iba a su derecho, como bien arriba parado.

   ❋    ❋    ❋    ❋    ❋    ❋    ❋

"A este lado, a la derecha, y ahí mismo pasó el carro con esa velocidad y cuando llegó en ese mismo extremo ahí que parece ser que fué a dar una vuelta, y ahí mismo con la velocidad que llevaba no pudo aguantar el carro, y ahí mismo dió el choque y cogió al señor ese que venía de arriba en la bicicleta en su mano derecha y lo mandó a la parte adentro del colegio."

Y en parecidos términos se expresaron los testigos José Rodríguez, Federico Díaz, Ramón Rivera y Ana Ortiz, que no fueron contradichos. El acusado no presentó prueba alguna.

La violencia del choque fué tal que no sólo lanzó a Padilla en la forma que conocemos produciéndole laceraciones en la cara, pecho, ambos brazos, cadera y pierna izquierda y

fractura de la primera, segunda, tercera, cuarta y quinta costillas del lado derecho, del frente y del pecho, de la clavícula, del húmero izquierdo, de la cuarta y quinta costillas del lado izquierdo, y otras más, si que también le hizo salir uno de sus zapatos, destrozando además la cerca y volcándose finalmente.

*Debe confirmarse la sentencia recurrida.*